UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AARON ABADI,

                              Plaintiff,

              -against-

GREYHOUND LINES, INC.,

                              Defendant.

Case No. 23-cv-07645 (JLR)

**<u>OPINION AND ORDER</u>**

JENNIFER L. ROCHON, United States District Judge:

    *Pro se* Plaintiff Aaron Abadi ("Plaintiff" or "Abadi") brings this action against

Greyhound Lines, Inc. ("Greyhound" or "Defendant"), challenging Greyhound's enforcement of

the federal COVID-19 mask mandate.  Abadi asserts claims against Greyhound for

discrimination on the basis of disability in violation of the Americans with Disabilities Act of

1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; the Rehabilitation Act of 1973, 29 U.S.C. § 720 *et*

*seq.*; the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"); the

New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"); and the

New Jersey Law Against Discrimination ("LAD"), among other causes of action.  Now before

the Court is Defendant's motion to dismiss the Complaint in its entirety.  Dkt. 17 ("Br.").  For

the following reasons, Defendant's motion is GRANTED.

**BACKGROUND**

    The Court accepts the factual allegations in the Complaint as true and draws all

reasonable inferences in Plaintiff's favor.  *See Costin v. Glens Falls Hosp.*, 103 F.4th 946, 952

(2d Cir. 2024).  The Court also considers materials incorporated by reference in the Complaint,

integral to the Complaint, or subject to judicial notice.  *See United States ex rel. Foreman v.*

*AECOM*, 19 F.4th 85, 106 (2d Cir. 2021); *Michael Greco Prods., Inc. v. RADesign, Inc.*, 112

F.4th 144, 148 n.1 (2d Cir. 2024).  Moreover, in light of Abadi's *pro se* status, the Court

construes the Complaint broadly.  *See, e.g.*, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471,

474-75 (2d Cir. 2006) ("It is well established that the submissions of a *pro se* litigant must be

construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'"

(emphasis in original) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006))).

## I.    Factual Allegations

Plaintiff Aaron Abadi, proceeding *pro se*, is a resident of New York City.  Dkt. 1

("Compl.) ¶ 1.  Abadi "travel[s] a lot" and visits, on average, "ten states or more each year."  *Id.*

¶ 46.  Abadi claims he was planning a "specific trip" to California, Texas, and other parts of the

country.  *Id.* ¶ 6.  Abadi has a sensory processing disorder that makes it difficult for him to wear

anything around his face or head, including a face mask.  *Id.* ¶¶ 16-20; Dkts. 1-2, 1-3, 1-4.  He

maintains that wearing a face mask causes him "extreme discomfort," including headaches,

irritation, and other symptoms.  Compl. ¶ 19.

Defendant Greyhound is headquartered in Dallas, Texas, and is incorporated in the State

of Delaware.  *Id.* ¶ 2.  Greyhound operates bus services throughout the continental United States,

*id.* ¶ 12, and operates various bus terminals in New York, including but not limited to the Port

Authority Bus Terminal in Manhattan, New York City, *id.* ¶ 7.

On March 11, 2020, COVID-19 was declared a pandemic.  Dkt. 1-5 at 3.  COVID-19

caused "significant death and hospitalizations, during the end of 2019, through 2020, and

continuing in 2021 and 2022."  Compl. ¶ 13.  In response to the global pandemic, the Center for

Disease Control ("CDC") announced guidance requiring all persons to wear masks in public

places and on transportation services.  *Id.* ¶ 14.  On or about February 1, 2021, the CDC issued

an order directing conveyance operators to use best efforts to ensure that any person on a

conveyance wears a mask when boarding or disembarking, and for the duration of travel.  Dkt. 1-

1 at 6; Requirement for Persons to Wear Masks While on Conveyances and at Transportation
Hubs, 86 Fed. Reg. 8025, 8027 (Feb. 3, 2021).[1]  The CDC's Order exempted "person[s] with a
disability who cannot wear a mask, or cannot safely wear a mask, because of the disability as
defined by the Americans with Disabilities Act."  Requirement for Persons to Wear Masks While
on Conveyances and at Transportation Hubs, 86 Fed. Reg. at 8027.  The CDC Order further
provided that:

> Operators of conveyances or transportation hubs may impose requirements, or
> conditions for carriage, on persons requesting an exemption from the requirement
> to wear a mask, including medical consultation by a third party, medical
> documentation by a licensed medical provider, and/or other information as
> determined by the operator, as well as require evidence that the person does not
> have COVID-19 such as negative result from a SARS-CoV-2 viral test or
> documentation of recovery from COVID-19. . . . Operators may also impose
> additional protective measures that improve the ability of a person eligible for
> exemption to maintain social distance (separation from others by 6 feet), such as
> scheduling travel at less crowded times or on less crowded conveyances, or seating
> or otherwise situating the individual in a less crowded section of the conveyance or
> transportation hub.  Operators may further require that persons seeking exemptions
> from the requirement to wear a mask request an accommodation in advance.

---

[1] Abadi's Complaint references the CDC's Order.  The Court also takes judicial notice of the
CDC's Order, finding that the information contained therein is "not subject to reasonable
dispute."  Fed. R. Evid. 201(b).  The Court may judicially notice facts that are either "(1)
generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and
ready determination by resort to sources whose accuracy cannot reasonably be questioned."
*Dixon v. von Blanckensee*, 994 F.3d 95, 102 (2d Cir. 2021) (quoting *Int'l Star Class Yacht
Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1989)).  Pursuant to
Federal Rule of Evidence 201, the Court may consider information from official government
websites.  *See, e.g.*, *Joyner v. Alston & Bird LLP*, No. 21-cv-08549 (AT), 2022 WL 913061, at
*2 (S.D.N.Y. Mar. 29, 2022) ("As the Second Circuit has explained, '[c]ourts may take judicial
notice of publicly available documents such as regulatory filings.'" (quoting *Lewis v. M&T Bank*,
No. 21-933, 2022 WL 775758, at *1 (2d Cir. Mar. 15, 2022) (summary order))); *Dark Storm
Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482, 489 (N.D.N.Y. 2020) ("The Court may take judicial
notice of documents" such as those "retrieved from official government websites or other
government records from such websites." (alteration adopted) (citation omitted)); *Gee v. Doe*,
No. 20-cv-07503 (ALC), 2022 WL 125342, at *2 n.2 (S.D.N.Y. Jan. 13, 2022) (taking judicial
notice of New York City Department of Correction's policies on government website).  Further,
when ruling on a 12(b)(6) motion, the Court may "consider 'matters of which a court may take
judicial notice.'"  *Dixon*, 994 F.3d at 101-02 (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308, 322 (2007)).

*Id.* at 8027 n.8.

On August 20, 2021, the Transportation Security Administration ("TSA") extended the mask requirement for individuals across all transportation networks throughout the United States through January 18, 2022, including commuter bus and rail systems.  Dkt. 1-1 at 3-4.

On August 21, 2021, Abadi sent Greyhound an email, stating:

> I have a sensory integration disorder, which is a medical disability that causes me not to be able to wear a mask.  I carry around a doctor's letter (attached) to that effect, that also states that I already had Covid, which would indicate that there is no significant health risk.  The DOT instructed the airlines to allow people like me to fly without a mask.
>
> I have already flown several times under those instructions.
>
> CDC Guidelines and federal laws exempt someone like me from wearing a mask.   Federal ADA laws require that you provide an accommodation for disabilities.  I would like to travel on your buses.
>
> Can I travel on your buses without a mask?
>
> Or can you provide me an accommodation that will allow me to use your bus system?

Compl. ¶ 30.

Abadi's email appended a letter from his doctor at NYU Langone Health asserting that he suffers from "extreme sensitivity to touch,[ ]mostly in the area of his head," and that he was therefore "unable to wear face mask or face shield,[ ]and should not be required to do so."  Dkt. 1-2.  The letter also represented that Abadi had "already recovered from COVID" and that he was "not contagious."  *Id.*  The letter does not reflect the doctor's license number or signature, but it is on NYU Langone Health's letterhead.  Abadi's neurologist has also stated, on a different form filed with the Florida Commission on Human Relations, that his disability meets the basic definition of disability under federal and state law.  Dkt. 1-4.

Greyhound's ADA Compliance Support Team responded the same day, outlining Greyhound's procedures for seeking an exemption from the mask requirement.  Compl. ¶ 31. Greyhound instructed Abadi to contact the Greyhound ADA Compliance Department with his medical documentation at least 24 hours prior to travel.  *Id.*  Greyhound provided an email address (ADA.Support@greyhound.com) and a phone number (214-777-6050).  *Id.*  Specifically, Greyhound indicated that Abadi would need to provide:

> 1. Current medical documentation from a qualified healthcare provider which identifies the disability and how the disability prevents you, the passenger, from wearing a mask and whether there is any action that can be taken which would allow you to wear a mask; and,
>
> 2. Evidence of a negative COVID-19 test taken no earlier than five days prior to planned travel.

*Id.*  Greyhound further advised that, in the event Abadi obtained an exemption, he would be required to "sit in the front seat(s) designated for customers with disabilities" and to "socially distance in the terminal and on the bus," and that he could be "required to travel on another schedule as designated by Greyhound to allow social distancing on the bus."  *Id.*  Greyhound stated that Abadi should not hesitate to contact the ADA Compliance Team with any further questions.  *Id.*

Abadi does not appear to have responded to Greyhound's email or to have otherwise contacted Greyhound after this exchange.  Notwithstanding that Abadi did not actually comply with Greyhound's exemption procedures, or contact the Greyhound ADA Compliance Team, he maintains that those procedures were "complicated" and "almost impossible to work out."  *Id.* ¶ 36.  Abadi asserts that, because of Greyhound's policies, he was "denied [his] right to travel." *Id.* ¶ 41.  He further alleges that he was "trying to raise money for a business project and was not able to get to California to meet prospective funders," resulting in lost business funding and

business opportunities. *Id.* ¶¶ 42, 46.  Abadi claims to have lost "over $50 [m]illion [d]ollars in business." *Id.* ¶ 43.

The federal mask mandate expired on May 11, 2023, the same day that the HHS Secretary's declaration of a public health emergency expired.  *See Abadi v. Am. Airlines, Inc*., No. 23-cv-04033 (LJL), 2024 WL 1346437, at *6 (S.D.N.Y. Mar. 29, 2024) (citing *Expired Order: Wearing of Face Masks While on Conveyances and at Transportation Hubs*, CDC.gov (May 12, 2023), https://www/cdc/gov/quarantine/masks/mask-travel-guidance.html).

## II.    Procedural History

On August 26, 2023, Abadi filed a Complaint against Defendant.  Compl.  Defendant moved to dismiss the Complaint on July 10, 2024.  Dkt. 17 ("Mot.").  Abadi filed his opposition on August 23, 2024, Dkt. 21 ("Opp."), and Defendant filed its reply on September 16, 2024, Dkt. 27 ("Reply").  The motion is now fully briefed and before the Court.

## LEGAL STANDARD

A court properly dismisses a claim for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  To survive a Rule 12(b)(1) motion to dismiss for lack of standing, a plaintiff "must allege facts that affirmatively and plausibly suggest that [he] has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113.  "Under Article III of the Constitution, federal courts are empowered to adjudicate only actual, ongoing cases or controversies." *Deeper Life Christian Fellowship, Inc. v. Sobol*, 948 F.2d 79, 81 (2d Cir. 1991).  "A case in federal court must be alive at all stages

of judicial proceedings, not only at the point at which a suit was originally filed." *Id.* "If events subsequent to the filing of a lawsuit resolve the controversy, the case should be dismissed as moot." *Id.*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a Rule 12(b)(6) motion, the court must "accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (alterations adopted) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). The court shall not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

"The Court ordinarily construes *pro se* pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest." *Abadi*, 2024 WL 1346437, at *17 (citing *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam)); *accord Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). This is "especially true when dealing with *pro se* complaints alleging civil rights violations." *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002), *superseded in part on other grounds by* 42 U.S.C. § 12102(3)(A), *as stated in Puccinelli v. S. Conn. State Univ.*, No. 21-cv-00763 (SVN), 2023 WL 4838291 (D. Conn. July 28, 2023). However, "*pro se* status does not relieve a plaintiff of the pleading standards otherwise prescribed by the Federal Rules of Civil Procedure." *Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007); *see also Triestman*, 470 F.3d at 477 ("[P]ro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983))). Moreover, in this

case, "Plaintiff is entitled to somewhat lesser solicitude because of his extensive experience with and schooling in the law as it applied to motions to dismiss and mask mandates and other public health measures taken to slow the spread of COVID-19." *Abadi*, 2024 WL 1346437, at *17.[2]

## DISCUSSION

Defendant moves to dismiss Abadi's Complaint in its entirety. *See* generally Br. The Court addresses each of Abadi's federal claims in turn, before turning to Abadi's state and city law claims under the NYCHRL, NYSHRL, and LAD.

### I. ADA Claim

Count One of the Complaint asserts that Defendant discriminated against Abadi due to his disability and did not allow him equal access to its public accommodations in violation of the ADA, and seeks injunctive relief. Compl. ¶¶ 48- 73. Greyhound moves to dismiss Abadi's ADA claim for a lack of standing under Rule 12(b)(1). Br. at 2-4. For the reasons set forth below, the Court finds that Abadi lacks standing to seek injunctive relief under the ADA.

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting U.S. Const. art. III, § 2, cl. 1). "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case — in other words, standing." *Id.* (quotation marks and citation omitted). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* The injury must be "actual or imminent, not conjectural or hypothetical." *Lujan v.*

---

[2] As the court noted in *Abadi v. American Airlines*, Abadi has brought various actions challenging mask mandates and other COVID-19 restrictions under federal and state disability law. *See* 2024 WL 1346437, at *17 n.21 (collecting cases). Abadi's claims have, however, almost uniformly been rejected. *See id*.

*Defs. of Wildlife,* 504 U.S. 555, 560 (1992) (citations and quotation marks omitted); *see also Am. Civ. Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) ("The Supreme Court has repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." (alteration adopted) (citation and quotation marks omitted)).  At all stages of litigation, "'the party invoking federal jurisdiction bears the burden of establishing the elements' of Article III standing."  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (alteration adopted) (quoting *Lujan*, 504 U.S. at 561); *see Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (even "at the motion to dismiss stage, the plaintiff still 'bears the burden of alleging facts that affirmatively and plausibly suggest that the plaintiff has standing to sue'" (alteration adopted) (quoting *Cortlandt St.*, 790 F.3d at 417)).

Title III of the ADA allows only for injunctive relief.   *See Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004) ("A private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages.").  "A plaintiff pursuing injunctive relief may not rely solely on past injury, but also must establish that 'she is likely to be harmed again in the future in a similar way.'"  *Calcano*, 36 F.4th at 74 (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)).  The Second Circuit has found an injury in fact under the ADA when: "(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [businesses] to plaintiff's home, that plaintiff intended to return to the subject location."  *Id.* (alteration in original) (quoting *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013)).  These factors ensure that the alleged prospective injury is

"sufficiently 'concrete and particularized.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). "[T]he central inquiry" is whether "the plaintiff plausibly alleges 'a real and immediate threat of future injury.'" *Id.* at 75 (quoting *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1233 (11th Cir. 2021)).

Abadi fails to establish an injury in fact. For one, he has not established a past injury under the ADA. Abadi's ADA claim is predicated on a failure to accommodate. Compl. ¶¶ 35, 55. The ADA, however, requires only "reasonable accommodation of the plaintiff's disability," not "every accommodation the disabled employee may request." *Fink v. N.Y.C. Dep't of Personnel*, 53 F.3d 565, 567 (2d Cir. 1995). Greyhound did not deny Abadi any services or refuse to provide an accommodation. To the contrary, Greyhound provided Abadi with its procedures and criteria for seeking an exemption from the federal mask mandate. Compl. ¶ 31. Abadi, however, elected to entirely forego Greyhound's accommodation procedures and to bring this lawsuit instead. But Abadi cannot bring a lawsuit premised on the "hypothetical" injury he would have suffered if he had been denied an exemption when he did not pursue Greyhound's exemption procedures at all. *Lujan*, 504 U.S. at 560; *see also Abadi v. City of New York*, 22-1560, 2023 WL 3295949, at *2 (2d Cir. May 8, 2023) (summary order) (dismissing challenge to City's vaccination employment requirement where "Abadi was not prevented from applying for the job because he was unvaccinated; he simply chose not to apply"); *see also Carlone v. Lamont*, No. 21-871, 2021 WL 5049455, at *3 (2d Cir. Nov. 1, 2021) (summary order) (plaintiff lacked standing to challenge a mask mandate where "the complaint does not state that [plaintiff] has ever actually been required to wear a mask or has been subject to enforcement of the mask mandate"). Abadi asserts that Greyhound's exemption approval process was "complex" and "almost impossible to work out," Compl. ¶ 36, but he does not allege that he either tried to comply with Greyhound's exemption process or that he sought, and was denied, a modification

thereof.  Abadi therefore has not pleaded "enough facts to make it plausible that [he] did indeed suffer the sort of injury that would entitle [him] to relief." *Guthrie v. Rainbow Fencing, Inc.*, 113 F.4th 300, 311 (2d Cir. 2024) (quoting *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 65-66 (2d Cir. 2021)).

Nor has Abadi shown that discriminatory conduct is likely to continue.  Abadi pleads a single incident of alleged discrimination in connection with a federal mask mandate that is no longer in effect.  Abadi himself concedes that the mask mandate is no longer in force but maintains that "the federal government is actively pursuing its reinstatement" and that it is "very likely that it will be reinstated by many States, municipalities, and even private businesses." Compl. ¶ 71.  For this proposition, Abadi cites only to news articles from 2023 discussing the reinstatement of mask mandates generally, and a report regarding Long COVID commissioned by the Department of Health and Human Services ("HHS") and independently produced by third-party company Coforma, which recommends "policies and protocols regarding masking and social distancing in public spaces." *Id.* ¶¶ 68-69, 72 n.1.  Even on a generous reading of the Complaint, these hardly amount to facts that plausibly show that Greyhound is "very likely" to imminently reinstate its mask mandate. *Id.* ¶ 71.  Abadi's assertions that the mandate will likely be reinstated are "purely speculative" and therefore insufficient to "giv[e] rise to an inference" that Abadi "will suffer future discrimination" by Greyhound. *Shotz v. Cates*, 256 F.3d 1077, 1081 (2d Cir. 2001).  In fact, the Third Circuit rejected substantially similar allegations brought by Abadi against Target Corporation on Article III standing grounds. *Abadi v. Target Corp.*, No. 23-1050, 2023 WL 4045373, at *2 (3d Cir. June 16, 2023) (per curiam).  There, as here, Abadi's allegations "pertained to a one-time incident" in connection with Target's in-store mask mandate, and Abadi "acknowledged that Target's in-store mask policy has [since] been lifted."

*Id.* The Third Circuit held that Abadi's contentions "that the mask requirement may be reinstated" were "too speculative to establish Article III standing." *Id.* This Court agrees and finds that Abadi lacked standing at the time that this action commenced.[3]

Moreover, while Abadi vaguely alleges that he "travels a lot" and was planning trips to California and Texas, Abadi does not plead that he plans to do so in the future using Greyhound's buses. Abadi's pleadings therefore do not establish an "inten[t] to return to the subject location." *Kreisler*, 73 F.3d at 188; *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d

---

[3] Abadi conflates mootness and standing doctrine. Opp. at 8-11. Abadi asserts that the issue is "not moot" because the "federal government is actively pursuing" the reinstatement of the mask mandate and it is "very likely that it will be reinstated by many States, municipalities, and even private businesses . . . ." Compl. ¶ 70. Even if the Court were to accept this purely speculative assertion, it would not cure Abadi's standing defect. While it is the defendant's burden to show that his or her voluntary compliance with a law moots a case, "it is the plaintiff's burden to establish standing by demonstrating that . . . the defendant's allegedly wrongful behavior will likely occur or continue and that the 'threatened injury [is] certainly impending.'" *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000) (alteration in original) (emphasis added) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Likewise, although there is an exception to mootness for acts that are "capable of repetition, yet evading review," "[s]tanding admits of no similar exception": "[I]f a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum." *Id.* at 191.

In any event, the Court also finds that Abadi's ADA claim is moot. "[I]n order to escape a mootness dismissal, a plaintiff must still demonstrate a reasonable expectation of repetition that is 'more than a mere physical or theoretical possibility.'" *New Yorkers for Religious Liberty, Inc. v. City of New York*, 121 F.4th 448, 457 (2d Cir. 2024) (quoting *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 86 (2d Cir. 2005)). Abadi has not stated more than a "possibility" that Greyhound will reinstate its mask mandate, rendering any request for injunctive relief under the ADA moot. *See, e.g., id.* (request to rescind the city's COVID-19 vaccine mandate was moot given that "there [was] no evidence to suggest that [a]ppellants ha[d] a reasonable expectation that [was] more than theoretical of its reinstatement"); *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 446 (2d Cir. 2021) (finding the risk of future COVID-19 suspensions "speculative" given "the mitigation measures that have become available to combat the spread of COVID-19, and the providential infrequency of pandemics"); *Dark Storm Indus. LLC v. Hochul*, No. 22-02725, 2021 WL 4538640, at *1 (2d Cir. Oct. 5, 2021) (summary order) (challenges to COVID-19 related executive orders deemed moot because restrictions were lifted and the possibility of recurrence was "speculative" (citation omitted)).

Cir. 2022) (plaintiff lacked standing to bring suit where plaintiff "d[id] not allege anywhere in

his complaint that he was using the website to arrange for future travel").  As courts in this

Circuit have acknowledged, "the Second Circuit's recent *Calcano* decision 'raised the bar

appreciably for adequately pleading standing to seek injunctive relief in ADA cases.'"  *Loadholt*

*v. Dungarees, Inc.*, No. 22-cv-04699 (VEC), 2023 WL 2024792, at *2 (S.D.N.Y. Feb. 15, 2023)

(quoting *Hennesy ex rel. Hennesy v. Poetica Coffee, Inc.*, No. 21-cv-05063 (KAM), 2022 WL

4095557, at *4 (E.D.N.Y. Sept. 7, 2022)); *see, e.g.*, *Calcano*, 36 F. 4th at 76 ("Plaintiffs' vague

assertions that they have been customers at Defendants' businesses 'on prior occasions'" do not

"nudge their claims 'across the line from conceivable to plausible.'" (quoting *Iqbal*, 556 U.S. at

680)).  Following *Calcano*, courts have found deficient complaints that make "vague" assertions

of an intent to return to the premises without setting forth more specific allegations as to why and

when the plaintiff intends to do so.  *See, e.g.*, *Delacruz v. Club Monaco U.S., LLC*, No. 19-cv-

10255 (PGG), 2024 WL 1827285, at *4 (S.D.N.Y. Apr. 26, 2024) (deeming conclusory

plaintiff's "vague assertion" of a future intent to return to store); *Velazquez v. Nextphase, Inc*.,

No. 22-cv-07967 (CM), 2023 WL 4054522, at *5 (S.D.N.Y. June 16, 2024) (plaintiff's assertion

that he "intend[ed] to visit the Website in the near future" deemed insufficient to plead an actual

or imminent injury); *Zinnamon v. Satya Jewelry II, LLC*, No. 23-cv-00781 (VEC), 2023 WL

3511123, at *2 (S.D.N.Y. Apr. 28, 2023) (complaint's "conclusory" allegations regarding

Plaintiff's "inten[t] to visit the Website in the near future" insufficient to establish standing

(citation omitted)).  Although cases applying *Calcano* often address the intent to return within

the context of ADA website claims, *Calcano* itself was not an ADA website case, and its basic

proposition stands regardless of the nature of the underlying ADA claim — that is, that plaintiffs

must allege nonconclusory facts of a "certainly impending" injury.  *Calcano*, 36 F.4th at 74

(emphasis omitted).  Abadi, who has not even offered "naked assertions" of an intent to return to Greyhound's facilities, clearly does not satisfy that standard.  *Id.* at 77-78.  At most, Abadi alleges that he "had been planning" — in the past tense — a "specific trip" to parts of the United States.  Compl. ¶ 6.  The allegations in the Complaint therefore do not plausibly establish that "the risk of harm is sufficiently imminent and substantial."  *Calcano*, 36 F.4th at 75 (quoting *TransUnion*, 594 U.S. at 415).

For the aforementioned reasons, the Court finds that Abadi has not adequately pleaded an injury in fact and therefore grants Defendant's motion to dismiss Abadi's ADA claim for a lack of standing under Rule 12(b)(1).

## II.    42 USC § 1985 Claim

Abadi separately asserts a conspiracy claim against Greyhound under 42 U.S.C. § 1985. Abadi alleges that Greyhound, along with other "similar companies, trains, and airlines, as an industry," conspired "with each other" and "with the federal agencies involved" to discriminate against himself and other similarly positioned individuals.  Compl. ¶¶ 77-81.  Abadi does not otherwise name the companies or federal agencies with whom Greyhound purportedly conspired. Defendant likewise moves to dismiss this claim for failure to state a cause of action under Rule 12(b)(6).  Br. at 4-6.  For the reasons below, the Court finds that Abadi's Section 1985 claim fails as a matter of law.

"To state a civil rights conspiracy under § 1985(3), a plaintiff must allege":

1) a conspiracy; 2) for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Gray v. Town of Darien*, 927 F.2d 69, 73 (2d Cir. 1991).  "A conspiracy is an agreement between two or more individuals where one acts in further[ance] of the object[] of the conspiracy and

each member has knowledge of the nature and scope of the agreement." *Abadi*, 2024 WL 1346437, at *25 (quoting *Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 339 (E.D.N.Y. 2010), *aff'd*, 417 App'x 96 (2d Cir. 2011) (summary order)).  Accordingly, to establish a conspiracy, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (citation omitted).  A plaintiff must therefore allege "specific facts that could give rise to an inference of collusion or conspiracy." *Roffman v. City of New York*, No. 01-cv-08601 (AGS), 2002 WL 31760245, at *6 (S.D.N.Y. Dec. 10, 2002).  "It is well settled that claims of conspiracy 'containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'"  *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (quoting *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993)); *see also Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (affirming dismissal where conspiracy allegations were "strictly conclusory" and did not "provid[e] any details of time and place" or "specify in detail the factual basis" for the claim (citations and quotation marks omitted)); *Tufano v. One Point Lane Corp.*, 64 F. Supp. 2d 119, 133 (E.D.N.Y. 1999), *aff'd sub nom. Tufano v. One Toms Point Lane Corp.*, *Bd. of Directors*, 229 F.3d 1136 (2d Cir. 2020) (unpublished table decision) (references to a "conspiracy and fraud" perpetrated through "meetings and communications" constituted "general allegations" that, absent factual support, "fail[ed] to satisfy the pleading requirements of a § 1985(3) claim").

Moreover, the "conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citation and quotation marks omitted).  The Second Circuit has

resisted interpreting Section 1985(3) as "protecting only [African Americans] and other analogously oppressed minorities," but has underscored that the class must possess "inherited or immutable characteristics" for it to be "sufficient to satisfy the class-based animus requirement." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (citation omitted).  Finally, the Plaintiff must show that the conspiracy was "aimed at interfering with rights that are protected against private, as well as official, encroachment."  *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993) (quoting *Carpenters v. Scott*, 463 U.S. 825, 833 (1983)); *see also Spencer v. Casavilla*, 44 F.3d 74, 77 (2d Cir. 1994) (the right must be "consciously targeted and not just incidentally affected").

The Court need not reach the question of whether individuals with disabilities constitute a qualifying class under Section 1985(3), because Abadi has not sufficiently alleged "a conspiracy, or an agreement to violate a federal right, or invidious discrimination."  *Abadi*, 2024 WL 1346437, at *25.  Abadi made substantially similar allegations of a conspiracy to enact a mask mandate in *Abadi v. American Airlines, Inc.* — a case challenging various airlines' implementation of the federal COVID-19 mask policy as discriminatory.  *See id.*  Abadi asserted therein that "the airline defendants . . . discriminated against [him]" in collaboration with "federal agencies and lawyers" to deprive Abadi of his civil rights.  *Id.* at *26.  The court held that those assertions "lack[ed] any legal foundation" and therefore were "merely conclusory allegations 'masquerading as factual conclusions.'"  *Id.* (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006)).  So too here.  Moreover, while in *Abadi v. American Airlines*, Plaintiff pleaded that the forty-six named defendant airlines conspired with each other, *id.* at *1, *26, here — beyond a cursory reference to "similar companies, trains, and airlines" and "federal agencies" — Abadi does not even name Greyhound's purported co-conspirators, Compl. ¶ 78.

In his opposition papers, Abadi cites to supposed "conspirators" named in other filed cases, *see* Opp. at 17 (citing *Abadi*, 2024 WL 1346437; *Abadi v. Nat'l R.R. Passenger Corp.*, No. 1:22-cv-03684 (TNM), 2024 WL 1344403 (D.D.C. Mar. 29, 2024)).  Abadi fails, however, to allege any relationship between Greyhound and the "companies, trains, and airlines" with which Greyhound supposedly conspired.  The Complaint offers only "freewheeling and speculative allegations" of an agreement among the travel industry at large and the federal government to discriminate against disabled persons.  *Abadi*, 2024 WL 1346437, at *26 (citation omitted).  These assertions "fail to raise a reasonable inference of conspiracy."  *Id.* (quoting *Morpurgo*, 697 F. Supp. 2d at 340)); *see also Johnson v. City of New York*, 669 F. Supp. 2d 444, 451 (S.D.N.Y. 2009) (dismissing Section 1985 claim where the complaint contained "no specific factual allegations respecting a meeting of the minds, specific communications between the . . . defendants, or even concerned activities or coordinated efforts between them"); *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013) ("Plaintiffs' conspiracy claims thus fail because the Complaint is devoid of any specific facts relating to the purported conspiracies."); *San Filippo v. U.S. Tr. Co. of N.Y., Inc.*, 737 F.2d 246, 256 (2d Cir. 1984) (plaintiff's "conclusory allegations of conspiracy are insufficient to survive . . . a 12(b)(6) motion for dismissal"); *Ziglar v. Abbasi*, 582 U.S. 120, 154 (2017) ("To state a claim under § 1985(3), a plaintiff must first show that the defendants conspired — that is, reached an agreement — with one another.").  "A bare assertion that a conspiracy existed, unsupported by any specific factual allegations, is itself insufficient to state a plausible claim to relief."  *Johnson*, 669 F. Supp. 2d at 451.

Construed in the light most favorable to Abadi, Abadi has at most alleged that Greyhound conspired with its own officers and agents to implement a discriminatory mask mandate.  Compl.

¶¶ 30-31.  However, any such claim is barred by the intracorporate conspiracy doctrine, which holds that "officers, agents, and employees of a single corporate entity, when acting within the scope of their employment, are legally incapable of conspiring together."  *Longobardi v. City of New York*, No. 21-cv-02705 (GBD), 2022 WL 1808902, at *5 (S.D.N.Y. June 2, 2022).  Abadi does not dispute that the Greyhound employees were "acting within the scope of their employment."  *Id.*  Rather, Abadi cites to *Novotny v. Great American Federal Savings & Loan Ass'n* for the proposition that a conspiracy can be found between officers and directors of a corporation.  584 F.2d 1235 (3d Cir. 1978), *vacated on other grounds*, 442 U.S. 366 (1979); Opp. at 12-13.  The Third Circuit's decision in *Novotny*, however, is not binding on this Court.  The courts of appeals are divided regarding the validity of the intracorporate conspiracy doctrine.  *See Ziglar*, 582 U.S. at 154 (discussing circuit split).  However, the Second Circuit — which binds this Court — has held that corporate officers and directors acting in the course of their corporate duties cannot form a "conspiracy" within the meaning of Section 1985(3).  *Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66, 71-72 (2d Cir. 1976); *see also Murphy v. City of Stamford*, 634 F. App'x 804, 805 (2d Cir. 2015) (summary order) (applying intracorporate conspiracy doctrine).

Even if Abadi has sufficiently pleaded the existence of a conspiracy, his claim still fails as a matter of law because he has not proffered any facts establishing that any such conspiracy was "motivated by . . . invidious discriminatory motive."  *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (quoting *Thomas*, 165 F.3d at 146).  "Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Bray*,

506 U.S. at 271-72 (second omission in original) (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).  Plaintiff only makes the conclusory assertion that Greyhound and others in the travel industry conspired together to "discriminate against [Plaintiff] due to his medical disability."  Compl. ¶¶ 77-78.  However, as in *Abadi v. American Airlines*, the facts pleaded by Abadi suggest that Greyhound was "not motivated by animus to those who for medical reasons could not wear a mask," but rather, that it "adopted [its] policies for medical reasons, *notwithstanding that* [*its*] *policies may have some incidental effect on those who, for medical reasons, might have challenges in wearing a mask.*"  2024 WL 1346437, at *27 (emphasis added) (finding no discriminatory motive and therefore dismissing Rehabilitation Act claims against airlines).  By Abadi's own admission, the CDC implemented the mask mandate in the midst of a global pandemic that caused "significant death and hospitalizations."  Compl. ¶ 13  The impetus for the federal mask mandate and for Greyhound's exemption policy is therefore most fairly construed as public health concerns.

Finally, Abadi fails to allege the deprivation of a constitutional right.  "Because 'Section 1985(3) provides no substantive rights itself,' a deprivation of a constitutional right is a required object of a conspiracy under 1985(3).'"  *Ochoa v. Bratton*, No. 16-cv-02852 (JGK), 2017 WL 5900552, at *9 (S.D.N.Y. Nov. 28, 2017) (quoting *Novotny*, 442 U.S. at 372)).  Abadi asserts that he was deprived of his constitutional right to travel.  Compl. ¶ 41; Opp. at 14.  The Supreme Court has held that the right to travel is, in at least some contexts, a "right constitutionally protected against private interference."  *Bray*, 506 U.S. at 274.  However, "it does not suffice for application of § 1985(3)" that the right to interstate travel be only "incidentally affected."  *Id.* at 275.  "The right must be *aimed at*," that is, "its impairment must be a conscious objective of the enterprise."  *Id.* (citation and quotation marks omitted).  Therefore, the defendant must do more

"than merely be aware of a deprivation of right that he causes" — he must "act at least in part for the very purpose of producing" the deprivation of such right. *Id.* at 276.

Abadi cannot satisfy this demanding standard. As pleaded, Greyhound's mask mandate was imposed in response to — and with the objective of mitigating the effects of — the global pandemic. Compl. ¶¶ 13-14. Any effect on Abadi's or other individuals with disabilities' right to interstate travel was therefore not the "conscious objective" of Greyhound's policies but merely "incidental" to Greyhound's response to a public health crisis. *See, e.g.*, *Abadi*, 2024 WL 1346437, at *27 (finding that airlines' mask mandate "only incidentally" affected the right to travel). Greyhound's mask policy was not adopted "because [it] would impede travel but notwithstanding that [it] would impact travel." *Id.*

### III.    42 U.S.C. § 1986 Claim

Abadi also alleges under 42 U.S.C. § 1986 that Greyhound was "aware of the conspiracy to interfere with the civil rights of the disabled by most of their industry" and "did nothing to stop it." Compl. ¶ 87. This claim, too, is deficient as a matter of law.

Section 1986 "provides a cause of action against anyone who 'having knowledge that any of the wrongs conspired to be done and mentioned in Section 1985 are about to be committed and having power to prevent or aid, neglects to do so.'" *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (quoting *Katz v. Morgenthau*, 709 F. Supp. 1219, 1236 (S.D.N.Y.), *aff'd in part and rev'd in part on other grounds*, 892 F.2d 20 (2d Cir. 1989)). A Section 1986 claim therefore "must be predicated upon a valid § 1985 claim." *Id.* Because Abadi's complaint makes only conclusory allegations of a conspiracy, Abadi's Section 1986 claim necessarily fails as a matter of law.

Separately, Abadi's Section 1986 claim is time-barred. Section 1986 claims have a one-year statute of limitations. 42 U.S.C. § 1986 ("[N]o action under the provisions of this section

shall be sustained which is not commenced within one year after the cause of action has

accrued."); *accord Longobardi*, 2022 WL 1808902, at *6.  Abadi commenced this action on

August 26, 2023.  *See generally* Compl.  Abadi alleges in his Complaint that the alleged

discriminatory conduct took place on August 21, 2021 — over two years prior to the

commencement of this action.  *Id.* ¶ 30.  Abadi suggests that the statute of limitations should be

tolled because "the potential damages were not immediately apparent," and because Abadi

"originally filed a complaint in the Northern District of Texas."  Opp. at 17-18.  Abadi cites no

authority, however, to support the tolling of the statute of limitations here.  In any event, Abadi's

claims rest on the fact that Greyhound required him in its August 21, 2021 email to comply with

an exemption policy Abadi deems unlawful.  This is therefore not a situation where the potential

damages "were not immediately apparent," because, for instance, of fraudulent concealment by

the opposing party.  Nor is there any basis for tolling the statute of limitations for the period of

time this action was pending in the Northern District of Texas.  Plaintiff filed the Northern

District of Texas action on December 6, 2022 — more than a year after the action had

accrued — and therefore still outside the statute of limitations.  *See* Original Complaint & Jury

Demand, *Abadi v. Greyhound Lines Inc.*, No. 22-cv-02722-G (N.D. Tex. Dec. 6, 2022).

## IV.    Rehabilitation Act Claim

Abadi further alleges that Greyhound, as a recipient of federal funds, discriminated

against him based on his disability and denied him equal access to its public accommodations in

violation of the Rehabilitation Act, 29 U.S.C. § 794(a).  Compl. ¶¶ 93-101.  Defendant argues

that this claim also fails to state a claim.  Br. at 6-10.  The Court agrees.

"The Rehabilitation Act of 1973 prohibits discrimination against handicapped or disabled

persons in any program or activity receiving Federal financial assistance."  *Abadi*, 2024 WL

1346437, at *32.  "To establish a prima facie case under the Rehabilitation Act, a plaintiff must

allege: [1] that he or she is a person with disabilities under the Rehabilitation Act, [2] who has

been denied benefits of or excluded from participating in a federally funded program or special

service, [3] solely because of his or her disability." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d

202, 216 (2d Cir. 2012). The phrase "program or activity" is defined by the Rehabilitation Act to

mean, among other things, all of the operations of an entire corporation "(i) if assistance is

extended to such corporation . . . as a whole; or (ii) [if the corporation] is principally engaged in

the business of providing education, health care, housing, social services, or parks and

recreation." 29 U.S.C. § 794(b)(3)(A)(i)-(ii). "For purposes of clause (i), the phrase 'as a whole'

means that federal assistance is extended to the organization otherwise than for some specific

purpose — put differently, that the recipient of federal funds received those funds as general

assistance." *Collins v. Giving Back Fund*, No. 18-cv-08812 (CM), 2019 WL 3564578, at *11

(S.D.N.Y. Aug. 6, 2019); *Abadi*, 2024 WL 1346437, at *33 ("The legislative history of Section

504 reveals that money distributed to an entity '"as a whole" refers to situations where the

corporation receives general assistance that is not designated for a particular purpose.'" (quoting

S. Rep. No. 100-64 (1987))).

Abadi's Rehabilitation Act claim is deficient in at least three respects. As an initial

matter, Abadi has not even sufficiently pleaded that Greyhound is a recipient of federal funds.

While the Complaint asserts that Greyhound has received "significant federal funds," it cites to a

broken URL for that proposition. Compl. ¶ 95. Abadi's opposition papers append the now-

deleted website page, which references financial assistance received by Greyhound through the

Federal Transit Administration (FTA)'s Section 5311(f) program. Opp. Ex. 1.[4] The contract

---

[4] On a motion to dismiss, "consideration is limited to the factual allegations in [the] complaint,
which are accepted as true, to documents attached to the complaint as an exhibit or incorporated
in it by reference, to matters of which judicial notice may be taken, or to documents either in

that Abadi appends, however, was last revised in September 2017. *See generally id.* Abadi therefore has not established that Greyhound was a recipient of federal funds at the time his cause of action accrued.

Moreover, even assuming Greyhound received federal assistance, Abadi has not pleaded that Greyhound bus services constitute a federally funded "program or activity" within the meaning of the Rehabilitation Act. Specifically, Abadi has not pleaded facts supporting a plausible claim that federal assistance was extended to Greyhound "as a whole." 29 U.S.C. § 794(b)(3)(A)(i); *see, e.g., Collins*, 2019 WL 3564578, at *11 ("[T]he phrase 'as a whole' means that . . . the recipient of federal funds received those funds as general assistance."). Section 5311 funding is specifically directed toward supporting public transportation "in rural areas with populations of less than 50,000" and therefore does not qualify as funding to Greyhound "as a whole." *Formula Grants for Rural Areas — 5311*, Fed. Transit Admin., https://www.transit.dot.gov/rural-formula-grants-5311 (last visited Dec. 17, 2024). "Federal aid which is limited in purpose . . . is not considered aid for the corporation as a whole." *Collins*, 2019 WL 3564578 at *12 (omission in original) (grant directed toward specific regional program did not constitute funding to corporation "as a whole"). Nor does Abadi allege that Greyhound is "principally engaged in the business of providing education, health care, housing, social services, or parks and recreation." 29 U.S.C. § 794(b)(3)(A).

---

plaintiffs' possession or of which plaintiffs have knowledge and relied on in bringing suit." *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Courts have discretion, however, to show *pro se* plaintiffs more leniency. While "material outside of a complaint generally is not to be taken into consideration on a motion to dismiss, the policy reasons favoring liberal construction of *pro se* complaints permit a court to consider allegations of a *pro se* plaintiff in opposition papers on a motion where, as here, those allegations are consistent with the complaint." *Rodriguez v. McGinnis*, 1 F. Supp. 2d 244, 246-47 (S.D.N.Y. 1998). The Court therefore considers Abadi's allegations in his opposition so long as those allegations are not inconsistent with the allegations pleaded in his Complaint.

To the extent that Abadi argues in his briefing that Greyhound also received funding through the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), *see* Opp. at 20, 24, those allegations cannot save his Rehabilitation Act claim.  Funding through the CARES Act was earmarked for a specific purpose and therefore does not extend to recipients "as a whole": "The Cares Act was aimed at helping businesses make payroll and pay operating expenses in order to keep people employed through the economic downturn."  *Abadi*, 2024 WL 1346437, at *33 (quotation marks and citation omitted).  For that reason, courts have held that CARES Act funding does not bring a corporation within the coverage of the Rehabilitation Act.  *Id.*

Finally, Abadi's Rehabilitation Act claim separately fails because Abadi has not pleaded facts supporting a plausible inference that he was excluded from Greyhound's facilities or services "on the basis of" his disability.  As noted above, Abadi alleges Greyhound discriminated against him by failing to accommodate his medical disability.  Compl. ¶¶ 35, 55; *see McElwee v. County of Orange*, 700 F.3d 635, 640 (2d Cir. 2012) ("[A] defendant discriminates when it fails to make a reasonable accommodation that would permit a qualified disabled individual 'to have access to and take a meaningful part in public services.'" (quoting *Powell*, 364 F.3d at 85)).  The Rehabilitation Act "does not," however, "require the employer to provide every accommodation the disabled employee may request, so long as the accommodation provided is reasonable."  *Fink v. N.Y.C. Dep't of Personnel*, 53 F.3d 565, 567 (2d Cir. 1995).  "A 'reasonable accommodation' is one that gives the otherwise qualified plaintiff with disabilities 'meaningful access' to the program or services sought."  *McElwee*, 700 F.3d at 641 (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 282 (2d Cir. 2003)).

Here, Greyhound responded promptly to Abadi's August 21, 2021 email seeking an exemption from the federal mask mandate with Greyhound's procedures for doing so.  Compl. ¶¶ 30-31.  Specifically, Greyhound advised Abadi that to claim an exemption, he would need to provide the Greyhound ADA Compliance Department, at least twenty-four hours prior to travel, with: (1) current medical documentation from a qualified healthcare provider; and (2) evidence of a negative COVID-19 test five days prior to planned travel.  *Id.* ¶ 31.  Greyhound also informed Abadi that if he was issued a certificate to travel without wearing a mask, he would need to socially distance in the terminal and on the bus and sit in the front seats designated for customers with disabilities, and that he could be required to travel on another schedule as designated by Greyhound to allow social distancing on the bus.  *Id.*  At no point was Abadi denied services or an accommodation.  Abadi takes issue with Greyhound's policies and procedures for seeking an exemption, but Abadi is not entitled to "every accommodation" he "may request."  *Fink*, 53 F.3d at 567.

For these reasons, the Court also dismisses Abadi's Rehabilitation Act claim.

## V.    State and City Law Claims

In addition to his federal claims, Abadi brings various state and city law claims, including claims under the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and New Jersey's Law Against Discrimination ("LAD").  These claims, too, fail as a matter of law.

### A.  NYSHRL and NYCHRL Claims

Abadi alleges that Defendant violated the NYSHRL and NYCHRL because it denied Abadi access to its facilities and buses, failed to engage in a cooperative dialogue with Abadi, and circulated a discriminatory exemption policy over email.  The Court addresses each claim in turn.

1.  **Denial of Access**

Abadi asserts that Greyhound denied him access to its facilities and buses under both the

NYCHRL and NYSHRL.  Compl. ¶¶ 102-107, 117-121.

"Claims under the NYSHRL are analyzed using the same standards that apply to the

ADA."  *Lowell v. Lyft, Inc*., 352 F. Supp. 3d 248, 262 (S.D.N.Y. 2018).  Abadi therefore must

establish that (1) he is disabled; (2) that Defendant owns, leases, or operates a place of public

accommodation; and (3) that Defendant discriminated against him by denying him a full and

equal opportunity to enjoy the services Defendant provides.  *See Rosa v. 600 Broadway*

*Partners, LLC*, 175 F. Supp. 3d 191, 198 (S.D.N.Y. 2016).  NYCHRL claims, however, must be

analyzed "separately and independently from any federal and state law claims," "construing the

NYCHRL's provisions 'broadly in favor of discrimination plaintiffs, to the extent that such a

construction is reasonably possible.'"  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*., 715

F.3d 102, 109 (2d Cir. 2013) (quoting *Albunio v. City of New York*, 947 N.E.2d 135, 137 (N.Y.

2011)).  Under the NYCHRL, it is an unlawful discriminatory practice for an owner of a place of

public accommodation to "refuse, withhold from, or deny" an individual with a disability "the

full and equal enjoyment" of its services or facilities.  N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

"[E]ven if the challenged conduct is not actionable under federal and state law, federal courts

must consider separately whether it is actionable under the broader New York City standards."

*Mihalik*, 715 F.3d at 109.

Abadi proceeds on the theory that Greyhound failed to make reasonable accommodations

to provide him with access to its facilities or buses.  Both the NYSHRL and NYCHRL provide

that "it is a discriminatory practice to 'refuse' or 'not to provide' a reasonable accommodation."

*Abadi v. NYU Langone Health Sys*., 705 F. Supp. 3d 172, 184 (S.D.N.Y. 2023) (alteration

adopted).  Under the NYSHRL, it is a discriminatory practice for an owner of a place of public accommodation to "refus[e] to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges advantages or accommodations to individuals with disabilities . . . ."  N.Y. Exec. Law. § 296(2)(c)(i).  The NYCHRL in turn provides that it is an unlawful discriminatory practice "not to provide a reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question," N.Y.C. Admin. Code § 8-107(15)(a), with a "reasonable accommodation" defined as "such accommodation that can be made that does not cause undue hardship in the conduct of the covered entity's business," *Van Vorst v. Lutheran Healthcare*, No. 21-004, 2021 WL 6101474, at *1 (2d Cir. 2021) (summary order) (quoting N.Y.C. Admin. Code § 8-102)).

Abadi has not pleaded any facts that demonstrate a denial of access to Greyhound's facilities or buses because of his disability under the NYSHRL.  Abadi inquired whether he could travel on Greyhound's buses without a mask or whether Greyhound would provide an accommodation that would allow him to use the buses.  Compl. ¶ 30.  In response, Greyhound provided Abadi with the process for seeking a medical exemption.  *Id.* ¶ 31.  Abadi, having elected to entirely forego Greyhound's exemption procedures, cannot now claim a denial of access.

For the same reasons, even construing the NYCHRL's provisions "broadly" in favor of Abadi, there is no "reasonably possible" construction of Abadi's allegations that would sustain his NYCHRL claim.  *Mihalik*, 715 F.3d at 109.  Abadi's NYCHRL and NYSHR claims for failure to provide access are therefore dismissed.

### 2.  Failure to Engage in a Cooperative Dialogue

Abadi separately asserts under the NYCHRL that Defendant failed to engage in a cooperative dialogue within a reasonable timeframe.  Compl. ¶¶ 127-131.

Under the NYCHRL, a public accommodation must "engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity has notice may require an accommodation . . . related to disability . . . ."  N.Y.C. Admin. Code § 8-107(28)(a).  "The statute defines the requisite 'cooperative dialogue' as the 'process by which a covered entity and a person entitled to an accommodation . . . engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity." *Van Vorst*, 2021 WL 6101474, at *2 n.6 (quoting N.Y.C. Admin. Code § 8-102)).  "This statutory provision suggests that [an] entity must take into account a patient's preferred accommodation, but that the accommodation that is 'reasonable' and required by the statute is appropriately determined on an individual basis." *Id.*

Abadi likewise has not pleaded any facts that plausibly give rise to an inference that Greyhound failed to engage in a cooperative dialogue.  In fact, the pleaded allegations suggest the exact opposite — Greyhound responded to Abadi's inquiry on the same day and indicated that any further questions could be directed either to the Greyhound ADA Compliance Team's email address or support line.  Compl. ¶ 31.  Abadi, not Greyhound, declined to engage in further dialogue.  Abadi has therefore failed to state a claim under N.Y.C. Admin. Code § 8-107(28).

### 3. Email Notification of Exemption Procedures

Abadi further alleges that Defendant's email response to his inquiry regarding an exemption from Greyhound's mask policy violated N.Y.C. Admin. Code § 8-107(4).  N.Y.C. Admin. Code § 8-107(4)(2)(a) provides that it shall be an unlawful discriminatory practice for any person who is the provider of a public accommodation to "make any declaration, publish, circulate, issue, display, post, or mail any written or printed communication, notice, or advertisement, to the effect that . . . [f]ull and equal enjoyment" of its facilities shall be "refused, withheld from, or denied to any person" on account of his or her disability.  Abadi's claim thus necessarily depends upon the Court finding that Greyhound's email had the "effect" of "refus[ing], with[holding] or den[ying]" Abadi access to Greyhound's facilities or buses on the basis of his disability.  For the reasons set forth above, the Court finds that there was no denial of services or refusal of an accommodation.  Therefore, Abadi's N.Y.C. Admin. Code § 8-107(4) claim also fails as a matter of law.

### B. New Jersey LAD Claims

Finally, the Court turns to Abadi's claims under the New Jersey LAD.  Abadi asserts that Defendant's purported denial of access to its facilities and buses, as well as Defendant's circulation by email of its exemption policies and procedures, likewise violated New Jersey's LAD.  Compl. ¶¶ 108-116.

Abadi's LAD claims are time-barred.  "The statute of limitations for all claims asserted under the LAD is two years." *Bolinger v. Bell Atl.*, 749 A.2d 857, 860 (N.J. Super. Ct. App. Div. 2000); *see also Montells v. Haynes*, 627 A.2d 654, 655 (N.J. 1993) (holding that two-year statute of limitations should apply to all LAD claims).  Abadi's Complaint details a single incident of alleged discrimination based on his email correspondence with Greyhound, with all relevant

events transpiring on August 21, 2021.  This Complaint was filed on August 26, 2023 — outside

of the two-year statute of limitations to file LAD claims.  For the same reasons that the Court

declines to toll the statute of limitations for Plaintiff's Section 1986 claim, the Court finds no

basis to toll the statute of limitations for Abadi's LAD claims.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is GRANTED.  The Clerk

of Court is respectfully directed to close the gavel at Dkt. 17 and to CLOSE the case.

Dated:  December 18, 2024
        New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge